IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY RAIFORD                    :

                                      :

    v.                         :   Civil Action No. DKC 12-3795

                                        :

MARYLAND DEPT. OF JUVENILE
  SERVICES                      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this disability discrimination case are a motion filed by Defendant Maryland Department of Juvenile Services ("Defendant") to dismiss the amended complaint (ECF No. 22), and a motion filed by Plaintiff Gregory Raiford for leave to file a second amended complaint (ECF No. 28). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, Plaintiff will be permitted to file a second amended complaint, albeit without some of the proposed claims. Defendant's motion to dismiss the first amended complaint will be denied as moot.

**I.  Background**

    **A.  Factual Background**

Plaintiff Gregory Raiford commenced this action against the Maryland Department of Juvenile Services, alleging violations of the Americans with Disabilities Act ("ADA"). (ECF No. 1). Plaintiff was *pro se* at the time he filed the original

complaint, but has since retained counsel. (ECF No. 11).  After retaining counsel, Plaintiff filed an amended complaint. (ECF No. 19).  The following allegations are contained in the amended complaint.

Plaintiff was employed by the Maryland Department of Juvenile Services at the Cheltenham Youth Facility as a Resident Advisor.  (*Id.* ¶ 3).  On June 21, 2010, Plaintiff suffered injury to his left knee as a result of breaking up two juveniles who were engaged in a fight at the facility.  (*Id.* ¶ 4).  He underwent surgery for this injury on December 10, 2010.  (*Id.* ¶ 5).  Plaintiff believes he was injured because there were "unsafe conditions at the facility and [an] unsafe number of juveniles for each resident advisor."  (*Id.* ¶ 6).  After his injury and until his surgery, Mr. Raiford was placed on modified duty, under which he had no contact with juveniles in the gate house and the special duty post, both of which were outside the facility.  (*Id.* ¶ 7).

Plaintiff underwent surgery for his knee injury on December 10, 2010.  (*Id.* ¶ 5).  On March 9, 2011, Plaintiff returned to work and requested that he be allowed to work in a modified capacity again; Defendant denied this request.  (*Id.* ¶ 8).  The next day, Plaintiff was told to report to Ms. White and Ms. Pinkney, Group Life Directors at the facility.  According to Plaintiff, Ms. White and Ms. Pinkney told him that he was

required to work full duty assignments at all locations in the facility. (*Id.* ¶ 10). Plaintiff asserts that "the facility permanently and regularly assigned four full duty Resident Advisors to the gate house and special duty post (modified duty) on a daily basis." (*Id.*).

Plaintiff again injured his knee the next month, on April 3, 2011, as a result of separating two individuals engaged in a fight. (*Id.* ¶ 11). When Plaintiff returned to work after this second knee injury, "his knee was not at its full strength and Plaintiff feared that he would reinjure it again if he was required to work full duty and to separate fighting juvenile residents." (*Id.* ¶ 13). According to Plaintiff, modified duty positions at the gate house and the special duty post outside the facility remained available, but Defendant refused to accommodate Plaintiff's request that he be assigned to those positions. (*Id.* ¶ 14).[1]

Plaintiff states that he again "separated juvenile residents who were involved in another fight, aggravated the injury to his leg, and then sought medical attention once again." (*Id.* ¶ 17). Plaintiff avers that on April 15, 2011, he was examined by Dr. Weeks "who requested that he have an Independent Medical Evaluation and provided written instructions

---

[1] Plaintiff also contends that he was scheduled to work overtime, which was mandatory. (ECF No. 19 ¶ 16).

to the Defendant and the facility to assign Plaintiff to work at a modified duty capacity." (*Id.* ¶ 18). The next day, Mr. Wilson, the facility superintendent, allegedly told Plaintiff that he would not be allowed to work in a modified duty capacity and would be referred to a different doctor. Plaintiff was asked to leave the facility after this meeting on April 16, 2011 and was placed on sick leave. (*Id.* ¶¶ 19-20). Plaintiff asserts that he repeatedly asked Ms. White, Ms. Pickney, and the Human Resources Department to be placed on modified duty in May 2011, but these requests were again denied.

Plaintiff was then ordered to see Dr. Robert Toney, Maryland Medical Director, on May 23, 2011. (*Id.* ¶ 23). Plaintiff asserts that Dr. Toney evaluated him for only fifteen minutes. After this evaluation with Plaintiff, Dr. Toney wrote a letter to Defendant on May 25, 2011, stating that Plaintiff was unable to perform his duties as a Resident Advisor. (*Id.* ¶ 24). Plaintiff contends that consequently, he was told to resign or be fired from his position.[2]

Mr. Raiford received a "Letter of Requirements," dated May 31, 2011. (*Id.* ¶ 26). Ms. White, the Director of Group Life at the Department of Juvenile Services, told him that he could

---

[2] Plaintiff asserts that he complained to the union about "his treatment," but his complaints were unsuccessful. (ECF No. 19 ¶ 25).

either quit or be fired.   Plaintiff believed that if he resigned, he was eligible to reapply with the state at a later date, albeit for a different position.   Mr. Raiford states that he did not want to end his employment, but was "forced out after Defendant refused to modify his duty in order to accommodate the requirements of the injury he received while performing the duties of his employment for Defendant."   (*Id.* ¶ 27).   Plaintiff asserts that Defendant violated the Americans with Disabilities Act by refusing to place him on modified duty, which his medical provider urged was required due to his two knee injuries.

**B.   Procedural History**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 10, 2012, alleging disability discrimination.   (ECF No. 22-3).   He received a Right to Sue letter on September 26, 2012. (ECF No. 1-2).   On December 26, 2012, Plaintiff filed his initial complaint in this court, alleging violations of the Americans with Disabilities Act against the Department of Juvenile Services and seeking monetary relief.   (ECF No. 1).   Plaintiff did not properly serve Defendant, prompting multiple orders from the undersigned instructing Plaintiff as to proper service. (ECF No. 5, 6, 8, 10).   As stated above, Plaintiff later retained counsel, who moved to correct the summons (ECF No. 12), which was granted (ECF No. 13).

Defendant moved to dismiss the complaint on August 29, 2013. (ECF No. 18). On the same date, Plaintiff filed an amended complaint (ECF No. 19), mooting the motion to dismiss. The amended complaint included several additional allegations, but asserted the same claim under the ADA and sought $150,000 in damages from the Department of Juvenile Services. Defendant then again moved to dismiss the amended complaint on September 12, 2013 (ECF No. 22). Plaintiff opposed the motion (ECF No. 25), and Defendant replied (ECF No. 30). Then, Plaintiff moved for leave to amend the complaint, (ECF No. 28), and Defendant opposed the motion (ECF No. 34).[3] In the proposed second amended complaint, Plaintiff seeks to add as a new defendant Sam J. Abed, the Secretary of Juvenile Services, in his official and individual capacity. (ECF No. 28-2 ¶ 34). Plaintiff also seeks to add a claim under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on the same allegations. He requests declaratory and monetary relief, and seeks reinstatement.

---

[3] Plaintiff initially filed a second amended complaint without obtaining Defendant's consent or seeking leave to amend. Plaintiff then withdrew this complaint and moved for leave to amend.

## II.   Motion for Leave to Amend Pursuant to Fed.R.Civ.P. 15(a)

### A.   Standard of Review

Rule 15(a)(1) permits a party to amend its pleading once as a matter of course within 21 days after serving it; or 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Plaintiff already amended the complaint once.   (ECF No. 19). Plaintiff then moved for leave to file a second amended complaint after Defendant moved to dismiss the amended complaint.   (ECF No. 28).   Pursuant to Fed.R.Civ.P. 15(a)(2), the court should "freely give leave [to amend pleadings] when justice so requires."   The court should deny leave to amend only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted); *Keller v. Prince George's Cnty.*, 923 F.2d 30, 33 (4th Cir. 1991) (upholding district court order denying plaintiff leave to amend his complaint to include claims that were barred by the applicable statute of limitations because such amendment would be futile).   "An amendment is futile when the proposed amendment is clearly insufficient or frivolous on its face, or if the amended claim would still fail to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)."   *El-Amin v. Blom*,

No. CCB-11-3424, 2012 WL 2604213, at *11 (D.Md. July 5, 2012) (internal citations and quotation marks omitted).

### B.   Analysis

Defendant argues that there are multiple problems with Plaintiff's proposed second amended complaint. First, Defendant incorporates the arguments made in its motion to dismiss the first amended complaint that Plaintiff's complaint should be dismissed for insufficient process and insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(2), (4), & (5).

Service of process was a problem for Plaintiff at the outset of this case when he was *pro se*, and he was granted several extensions to serve the Maryland Attorney General properly. (ECF Nos. 5 & 8). After Plaintiff's newly-retained counsel entered his appearance on June 26, 2013 (ECF No. 11), he also moved to correct the summons issued by his client, which the undersigned granted. (ECF Nos. 12 & 13). Fed.R.Civ.P. 4(c) provides that "[a] summons must be served with a copy of the complaint." According to Defendant, Plaintiff served a summons *without* the complaint. (ECF No. 22-2). Defense counsel then apparently alerted Plaintiff of this deficiency and twice requested – via phone and e-mail on August 12 and 14, 2013, respectively – that he send a copy of the complaint. "[Y]et no copy was ever provided to the Department." (ECF No. 22-1, at 5 n.1). Plaintiff's counsel does not dispute that he never

provided a copy of the complaint to Defendant, but argues that it had actual notice of the *EEOC* claim. "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *O'Meara v. Waters*, 464 F.Supp.2d 474, 476 (D.Md. 2006) (*citing Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). But as Defendant points out, having actual notice of the administrative action is *not* the same as having actual notice of a federal lawsuit. Plaintiff's disregard for the rules is troubling. As will be discussed below, Plaintiff will be permitted to file a second amended complaint and, in the interest of justice, the action will not be dismissed on the basis of improper service. Defendant obtained actual notice of the pending litigation and has been able to challenge the sufficiency of the pleadings.

Next, Defendant asserts that "Plaintiff's amendment is a result of undue delay and repeated failures to cure a multitude of deficiencies in any of the prior [] versions of the complaint. The amendment would also unduly prejudice the Department and Secretary Abed, while being futile due to numerous substantive and procedural deficiencies." (ECF No. 24, at 3-4). Plaintiff's motion to amend is completely devoid of

any explanation for not having earlier amended the complaint. Indeed, Plaintiff's motion contains no analysis of the prejudice, bad faith, and futility factors under Rule 15; instead, Plaintiff merely appends his proposed second amended complaint to the motion and declares that it will "clarify the remaining issues in this case."[4]   (ECF No. 28, at 1).   Nor has Plaintiff filed a reply brief in support of his motion for leave to amend.   It does not appear that the proposed complaint contains any new factual allegations; the Rehabilitation Act claim is largely premised on the same facts contained in the two prior complaints.   Putting these deficiencies aside, Plaintiff moved for leave to amend fairly quickly after presumably realizing the deficiencies contained in his amended complaint, insofar as he sought compensatory relief from the Department of Juvenile Services for violations of the ADA.   Because it does not appear that Defendant will be prejudiced or that there was undue delay, the final step is to determine whether amendment would be futile.

---

[4]   Every motion must include supporting facts and legal analysis, which is surprisingly absent from Plaintiff's motion to amend.   Plaintiff's counsel would be well-advised carefully to review the Federal Rules of Civil Procedure and the Local Rules to ensure compliance therewith going forward.

1.   **ADA Claim against the Department of Juvenile Services**

In its opposition to Plaintiff's motion to amend, Defendant incorporates all of the arguments from its prior motion to dismiss as to why the ADA claim against the Department of Juvenile Services must be dismissed.  First, Defendant argues that it enjoys sovereign immunity under the Eleventh Amendment for claims under the ADA seeking monetary relief against state agencies.  Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments, cannot be sued in federal court by its citizens without the state's consent.  *See* U.S. Const. Amend, XI; *Dixon v. Balt. City Police Dep't*, 345 F.Supp.2d 512, 513 (D.Md. 2003).  In his opposition to the motion to dismiss, Plaintiff concedes this point.  But the amended complaint seeks monetary relief, as well as declaratory judgment and reinstatement, presumably against both the Department of Juvenile Services and Secretary Abed.  To the extent Plaintiff still seeks monetary relief under the ADA against the Department of Juvenile Services or Secretary Abed in his official capacity in the proposed second amended complaint, leave to file will be denied.  *Bd. of Trustees of the Univ. of Ala. V. Garrett*, 531 U.S. 356, 363-74 (2001) (Congress did not validly abrogate the State's sovereign immunity from suit by private individuals for monetary damages under Title I of the ADA).

Plaintiff also may not seek equitable relief or reinstatement from the Department of Juvenile Services, although such relief may be sought from a state official sued in his official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (where "a state official in his or her official capacity [is] sued for injunctive relief . . . 'official-capacity actions for prospective relief are not treated as actions against the State.'" (*quoting Ex parte Young*, 209 U.S. 123, 159-60 (1908))). Accordingly, Plaintiff will not be permitted to bring an ADA claim against the Department of Juvenile Services.

**2. ADA Claim against Secretary Abed in his Official Capacity**

Defendant argues that "the addition of Secretary Abed in his official capacity is a legal redundancy inasmuch as a suit filed against him in such a manner is the same as a suit against the State." (ECF No. 34, at 6). Because the type of relief Plaintiff seeks under the ADA in his proposed second amended complaint can only be recovered against a state official in his official capacity, the ADA claim against Secretary Abed is not redundant. *Kronk v. Carroll County, MD*, Civ. Case No. L-11-0277, 2012 WL 245059, at *8 (D.Md. Jan. 25, 2012) ("[c]ourts have specifically recognized that a plaintiff may seek reinstatement under the doctrine of *Ex Parte Young* in cases

alleging violations of the ADA"); *Fink v. Richmond*, Civ. Action No. DKC 2007-0714, 2008 WL 9364730, at *8 (D.Md. Mar. 24, 2008) ("Plaintiff may seek prospective injunctive relief from Defendants Hettel and Richmond under the ADA, even if sovereign immunity bars the damage action.").

Defendant also argues that Plaintiff has not exhausted his administrative remedies as to Secretary Abed because he was not named in the EEOC charge filed on April 10, 2012. (ECF No. 22-3). As a general rule, a civil action for employment discrimination may only be brought against the party named in the original administrative charges filed with the EEOC. *See Alvarado v. Board of Trustees of Montgomery Community College*, 848 F.2d 457, 458 (4th Cir. 1988); *Afande v. National Lutheran Home for the Aged*, 868 F.Supp. 795, 800 (D.Md. 1994). The naming requirement serves dual purposes: "[f]irst, it notifies the charged party of the asserted violation[;] [s]econdly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." *Alvarado*, 848 F.2d at 458-59. "This requirement is not applied in a hyper-technical fashion, however. It will be excused when the complainant names an entity that is functionally identical to the legal entity against which suit would eventually be filed, or when the purposes of the requirement are substantially met." *Kronk*, 2012

WL 245059, at *5; *Alvarado*, 848 F.2d at 460 (naming requirement satisfied when charge named college instead of board of trustees because the two entities were essentially identical).

In cases where courts have overlooked a plaintiff's failure to name individual defendants in their official capacity in the charging complaint, the defendants at issue held positions where they represented the named defendant corporation or organization in an official capacity, such as here. *McAdoo v. Toll*, 591 F.Supp. 1399, 1404 (D.Md. 1984) (naming requirement satisfied where charge listed University of Maryland and the complaint included specific university officials, such as the President, Chancellor, and Provost in their official capacities); *Efird v. Riley*, 342 F.Supp.2d 413, 420 (M.D.N.C. 2004) (naming requirement satisfied when sheriff's department was named as respondent in the EEOC charge and plaintiff subsequently sued the sheriff); *Vanguard Justice Soc. Inc. v. Hughes*, 471 F.Supp. 670, 689 (D.Md. 1979) (naming requirement satisfied where charge listed Civil Service Commission of Baltimore and complaint included individual commissioners in their official capacity); *cf. Davis v. BBR Management LLC*, Civ. Action No. DKC 10-0552, 2011 WL 337342, at *5 (D.Md. Jan. 31, 2011) ("the individual defendants named in [p]laintiff's complaint had no reason to know of the EEOC charge and were not in positions to make them substitutable for or essentially identical to the named

respondent in the charge."). Such is the case here, to the extent Secretary Abed is named in his official capacity. Accordingly, Plaintiff's failure to name Secretary Abed in his official capacity in the EEO complaint is not detrimental to his ADA claim for injunctive relief against Secretary Abed in his official capacity.[5]

Defendant also challenges the timeliness of Plaintiff's claim of failure to accommodate pursuant to the ADA. The ADA – using the procedures of Title VII - requires a plaintiff to file an EEOC charge within a prescribed limitations period. 42 U.S.C. § 2000e-5(e)(1). In deferral states such as Maryland, that limitations period is 300 days from the date of the allegedly discriminatory act. *Id.*[6] "Courts strictly adhere to these time limits and rarely allow equitable tolling of limitations periods." *Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D.Md. 2003), *aff'd*, 85 F.App'x 960 (4th Cir. 2004).

Plaintiff's EEO charge was filed on April 10, 2012, meaning that only those acts that allegedly violated the ADA which occurred within 300 days of that date are timely filed.

_____

[5] Plaintiff alleges a violation of Title I and Title II of the ADA in his proposed second amended complaint, but only Title I applies because it governs disability discrimination in the employment context.

[6] A "deferral state" is one that has its own state or local agency with authority to grant or seek relief from employment discrimination or to institute criminal proceedings on behalf of the alleged victim. 42 U.S.C. § 2000e-5(e)(1).

Defendant argues that Plaintiff alleged in the EEO complaint that he was denied his request for a reasonable accommodation on April 17, 2011, but he did not bring his EEO claim until April 10, 2012, more than 300 days later. (ECF No. 22-3; ECF No. 22-1, at 14). Plaintiff believes that the clock started to run on July 1, 2011, when he "involuntarily resigned," because he "was allowed to continue to work and receive benefits from his employment at Defendant Department of Juvenile Services" until then. (ECF No. 25, at 3). Plaintiff attempts to use the "continuing violation" theory, which "allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (*citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)).

The continuing violation theory only applies, however, when an employee asserts a hostile work environment claim. *Id.; see also Szedlock v. Tenet*, 61 F.App'x 88, 93 (4th Cir. 2003) ("The Supreme Court's ruling in [*Morgan*], however, makes clear that unless the plaintiff alleges a hostile work environment [claim] . . . each instance of discrimination is a discrete act."). Plaintiff cites no authority discussing the continuing violation doctrine in the context of a failure to accommodate claim. Courts that have analyzed the doctrine in connection with

failure to accommodate claims have concluded that the doctrine does *not* apply. *See Teague v. Northwestern Mem'l Hosp.*, 492 F.App'x 680, 684 (7th Cir. 2012); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130-31 (1st Cir. 2009); *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007); *Marshall v. Donahoe*, No. DKC 12-0431, 2013 WL 597596, at *4 (D.Md. Feb. 15, 2013); *Taylor v. Fed. Express Corp.*, No. RDB-03-195, 2004 WL 5231978, at *9 (D.Md. July 28, 2004). Consequently, a plaintiff may only proceed and recover on deliberate discrimination that occurred within the limitations period, *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 214-15 (2010), although he is not barred from using prior acts as background evidence in support of a timely claim, *Morgan*, 536 U.S. at 113.[7]   Therefore, only those acts that occurred between June 15, 2011 and April 10, 2012 are actionable as a failure to

---

[7] Plaintiff's proposed second amended complaint includes identical claims under the Rehabilitation Act. The Rehabilitation Act – unlike the ADA – has no administrative exhaustion requirement. It also does not specify a limitation period. Because of this, courts "borrow" the most appropriate or analogous state statute of limitations and apply it to the federal cause of action. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). "Maryland courts apply the three-year limitations period governing general civil actions to [] Rehabilitation Act claims." *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F.App'x 223, 226 (4th Cir. 2013) (citations omitted); *see also Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d 244, 251 (D.Md. 2004) (holding that "the statute of limitations for Rehabilitation Act claims in Maryland is three years"). Plaintiff's Rehabilitation Act claim falls within this time period.

accommodate claim under the ADA against Secretary Abed in his official capacity.[8]

### 3. ADA Claim against Secretary Abed in his Personal Capacity

The ADA claim against Secretary Abed in his personal capacity will not proceed because "the ADA does not authorize suit against individuals for violating its provisions." *Altevorgt v. Kirwan*, Civ. No. WDQ-11-1061, 2012 WL 135283, at * 5 (D.Md. Jan. 13, 2012); *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999); *Jones v. Sternheimer*, 387 F.App'x 366, 368 (4th Cir. 2010) ("Title VII, the ADA, and the ADEA . . . do not provide for causes of action against defendants in their individual capacities."); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3rd Cir. 2002) ("there appears to be no individual liability for damages under Title I of the ADA" because the statute is limited to "employers" with fifteen or more employees). Moreover, although Plaintiff names Secretary Abed in his personal capacity, he states that Sam J. Abed has violated the ADA "[i]n his capacity as Secretary of Juvenile Services." (ECF No. 28-2

---

[8] In the reply brief to its motion to dismiss, Defendant argued – for the first time – that to the extent Plaintiff alleges constructive discharge, this claim is also untimely. (ECF No. 30, at 4). Because Defendant raised this argument for the first time in the reply brief, and did not brief it in its opposition to Plaintiff's motion to amend, it will not be addressed.

¶ 38).[9]  Plaintiff has not identified any acts by Secretary Abed that would subject him to personal liability for the alleged failure of the Department of Juvenile Services to provide a reasonable accommodation for Plaintiff.

### 4. Rehabilitation Act Claim against the Department of Juvenile Services

Defendant argues that the same grounds it asserted to support dismissal of the ADA claim also support denying leave to amend to include a Rehabilitation Act claim against it. Defendant is not quite correct.  Plaintiff's claims against the Department of Juvenile Services under the Rehabilitation Act are not subject to dismissal on sovereign immunity grounds because "a State that accepts federal funding under the Rehabilitation Act thereby waives its sovereign immunity in suits brought under that Act."  *Hartman v. University of Maryland at Baltimore*, Civ.

---

[9]  Furthermore, Plaintiff also failed to exhaust his administrative remedies insofar as he seeks to bring an ADA claim against Secretary Abed in his personal capacity because he did not name him in his personal capacity in his EEO complaint. *Vaeth v. Mayor and City Council of Balt. City*, Civ. No. WDQ-11-0182, 2011 WL 4711904, at *3 (D.Md. Oct. 4, 2011) ("individual defendants are not subject to personal liability when an EEOC charge names only the City of Baltimore as the respondent"); *Tuttle v. Anuvia Prevention & Recovery*, No. 3:13CV134, GCM, 2013 WL 3899666, at *3 (W.D.N.C. July 29, 2013) ("the fact that some of the Defendants may have had knowledge of Plaintiff's EEOC charge against the company does not put them on notice that they could be personally liable for the alleged violations. Therefore, Plaintiff's [] ADA claim[] [is] also dismissed for lack of subject matter jurisdiction due to her failure to exhaust her administrative remedies with respect to the individual Defendants.").

Action No. ELH-10-2041, 2013 WL 6858854, at *2 (D.Md. Dec. 20, 2013); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 493 (4th Cir. 2005); *Adams*, 834 F.Supp.2d at 391 ("The Fourth Circuit has held that this provision is an unambiguous and unequivocal condition requiring waiver of Eleventh Amendment immunity for certain claims in order to receive federal funding").   Thus, Plaintiff can seek monetary relief from the Department of Juvenile Services under the Rehabilitation Act, as long as the claim has been sufficiently pled.

Defendant next argues that Plaintiff failed to establish that he was a "qualified individual" under the Rehabilitation Act.  (ECF No. 34, at 10).   To state a claim for failure to accommodate under Section 504 of the Rehabilitation Act, Plaintiff must allege facts supporting: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position []; and (4) that the [employer] refused to make such accommodations." *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) ("Because the language of [Title I of the ADA and Section 504 of the Rehabilitation Act] is substantially the same, we apply the same

analysis to both."). Plaintiff bears the burden of establishing his ability to perform the essential functions of his job with a reasonable accommodation. *Tyndall v. Nat'l Educ. Cts., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994). "Reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

Defendant contends that Plaintiff "has offered nothing but bald and conclusory statements to suggest that he was capable of performing the essential functions of the position, while simultaneously asserting that the State Medical Director determined he was unable [to] perform[] the duties of a Resident Advisor." (ECF No. 34, at 10-11). Defendant's argument is unavailing. In the proposed second amended complaint, Plaintiff asserts that he could perform the essential functions of the job by working at the gate house and special assignment post from June 21, 2010 until his surgery on December 10, 2010. (ECF No. 28-2 ¶ 43). Moreover, Plaintiff asserts that other Resident Advisors were assigned to the gate house and special assignment post. That Dr. Robert Toney, the Medical Director in Maryland, concluded that Plaintiff was unable to perform his duties as a Resident Advisor is inapposite at this stage, considering

Plaintiff's allegation that Dr. Toney evaluated him in less than fifteen minutes and was not an orthopedic specialist. (*Id.* ¶ 26).[10]  Accordingly, the failure to accommodate claim under the Rehabilitation Act is not futile.

### 5.   Rehabilitation Act Claim against Secretary Abed in his Official Capacity

Defendant argues that Plaintiff's Rehabilitation Act claim against Secretary Abed in his official capacity is futile because "the proposed complaint is void of any reference of action on behalf of Secretary Abed regarding the allegations of discrimination" and the count alleging violations of the Rehabilitation Act does not mention Secretary Abed's involvement. (ECF No. 34, at 9).  A lawsuit against Secretary Abed in his official capacity alleging violations of the Rehabilitation Act is in essence a lawsuit against the Department of Juvenile Services and Plaintiff need not plead any personal involvement by Secretary Abed in the alleged violations.  Plaintiff may seek monetary damages and equitable relief from either the Department of Juvenile Services or Secretary Abed in his official capacity for violations of the Rehabilitation Act.  *Shepard v. Irving*, 77 F.App'x 615, 619 (4th

---

[10]  Defendant does not challenge the sufficiency of Plaintiff's allegations as to the other elements of a failure to accommodate claim under the Rehabilitation Act. (*See* ECF No. 34, at 10-11).

Cir. 2003) ("the plaintiff may seek damages and injunctive relief against [George Mason University] and Merten and Mulherin, in their official capacities, under § 504 of the Rehabilitation Act.").

### 6.   Rehabilitation Act Claim against Secretary Abed in his Personal Capacity

Plaintiff's claim under the Rehabilitation Act against Secretary Abed in his personal capacity fails because the Rehabilitation Act does not impose liability on individuals. *Stiner v. Bd. of Educ. of Cecil County Maryland*, Civ. Action No. WDQ-13-1484, 2014 WL 69111, at *3 (D.Md. Jan. 7, 2014); *Young v. Barthlow*, CIV.A. RWT-07-662, 2007 WL 5253983, at *2 (D.Md. Nov. 7, 2007) ("Individual liability is not contemplated under § 504 of the [Rehabilitation Act]."). Accordingly, the Rehabilitation Act claim against Secretary Abed in his personal capacity cannot proceed.

## III. Conclusion

For the foregoing reasons, the motion for leave to amend the complaint filed by Plaintiff will be granted in part and denied in part. He will be permitted to file a Second Amended Complaint within fourteen (14) days, limited as stated in this Memorandum Opinion. Specifically, Plaintiff will be allowed to plead an ADA claim only against Secretary Abed in his official capacity and for prospective equitable relief only - not

compensatory damages - for acts that occurred between June 15, 2011 and April 10, 2012.  Plaintiff will also be permitted to plead a Rehabilitation Act claim, seeking both compensatory damages and prospective equitable relief from *either* the Department of Juvenile Services or Secretary Abed in his official capacity.  Accordingly, Defendant's motion to dismiss the amended complaint will be denied as moot.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
